# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:12-cr-291-SI |
| v. | **OPINION AND ORDER** |
| **BERNARDO CONTRERAS GUZMAN**, and **JESUS MORALES**, | |
| Defendants. | |

Billy J. Williams, Acting United States Attorney, Geoffrey A. Barrow, Assistant United States Attorney, United States Attorney's Office for the District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jeffrey S. Sweet, Assistant United States Attorney, 405 East 8th Avenue, Suite 2400, Eugene, OR 97401. Of Attorneys for the United States.

Stephen R. Sady, Chief Deputy Defender, Elizabeth G. Daily and Bryan E. Lessley, Assistant Federal Public Defenders, Federal Public Defender's Office, 101 S.W. Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Bernardo Contreras Guzman ("Guzman") and Jesus Morales ("Morales") (collectively, "Defendants") each filed a motion under 18 U.S.C. § 3582(c)(2) seeking a two-level reduction of their sentences based on United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") Amendment 782. The United States opposes these motions, arguing that neither Defendant is eligible for a sentence reduction under Amendment 782 because each Defendant's original sentence is lower than his amended guideline range and thus under the Sentencing Commission's policy statement U.S.S.G. § 1B1.10, Defendants are not eligible for a reduction. Defendants

argue that the provisions of this policy statement contradict one another, are contrary to the

Sentencing Commission's statutory directive, and violate the United States Constitution.

Defendants further argue that under the doctrine of constitutional avoidance, the Court should

interpret § 1B1.10 in a manner consistent with Defendants' interpretation. On November 20,

2015, the Court held oral argument on this motion and motions in two other cases asserting

similar arguments.[1] For the reasons that follow, Defendants' motions are denied.

## STANDARDS

### A.  Sentence Reduction under 18 U.S.C. § 3582

"A federal court generally 'may not modify a term of imprisonment once it has been

imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).

Congress provided a narrow exception to that rule "in the case of a defendant who has been

sentenced to a term of imprisonment based on a sentencing range that has subsequently been

lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also Dillon*, 560 U.S.

at 825 (noting that "§ 3582(c)(2) does not authorize a sentencing or resentencing proceeding" but

instead provides for the "'modif[ication of] a term of imprisonment' by giving courts the power

to reduce an otherwise final sentence in circumstances specified by the Commission") (alteration

in original). This authority to modify a previously-imposed prison sentence "represents a

congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to

the judgments reflected in the Guidelines." *Dillon*, 560 U.S. at 828.

Congress has given the Sentencing Commission a "substantial role . . . with respect to

sentence-modification proceedings." *Id.* at 826. Congress has charged the Sentencing

Commission "both with deciding whether to amend the Guidelines, and with determining

---

[1] *United States v. Aleksander Gorbatenko*, Case No. 10-cr-0396-SI, and *United States v.
Jose Carranza Gonzalez*, Case No. 12-cr-0154-SI.

whether and to what extent an amendment will be retroactive." *Id.* (citation omitted); *see also* 28 U.S.C. § 994(u) ("If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."). Thus, courts are "constrained by the Commission's statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" *Dillon*, 560 U.S. at 826 (quoting 28 U.S.C. § 994(u)).

In § 3582(c), Congress specifically required that any sentence modification be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A)(ii), 3582(c)(2); *see also Dillon*, 560 U.S. at 821 ("Any reduction [pursuant to § 3582(c)(2)] must be consistent with applicable policy statements issued by the Sentencing Commission."). The policy statement governing sentencing modifications after a retroactive amendment to the Guidelines instructs courts not to reduce a term of imprisonment if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. Manual § 1B1.10(a)(2)(B).

In deciding a motion under § 3582(c)(2), a court must follow a two-step process. "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. This requires determining the amended guideline range, which is the range that would have been applicable to the defendant if the amendment had been in effect at the time of the defendant's original sentencing. *Id.*; *see also* § 1B1.10(b)(1). In making this determination, courts are to substitute only the new amendment "for the corresponding guideline provisions that were applied when the defendant was sentenced and

shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1); *see also*

*Dillon*, 860 U.S. at 827. The Sentencing Commission further limited application of a retroactive

Guidelines amendment by instructing that a court cannot reduce a sentence "to a term that is less

than the minimum of the amended guideline range determined under subdivision (1) of this

subsection," with the exception of making a reduction that is comparable to what was made at

the time of original sentencing as a result of "a government motion to reflect the defendant's

substantial assistance to authorities . . . ." § 1B1.10(b)(2); *see also Dillon*, 560 U.S. at 827

(discussing a previous version § 1B1.10(b)(2) that allowed a court to apply comparable

departures and variances as were applied at the original sentencing and noting this instruction

was "[c]onsistent with the limited nature of § 3582(c)(2) proceedings"). Step two of the

§ 3582(c) inquiry is to consider any applicable § 3553(a) factors and determine, in the discretion

of the Court, whether any reduction authorized by the Guidelines amendment is warranted in

whole or in part. *See Dillon*, 560 U.S. at 827; 18 U.S.C. § 3582(c)(1)(A).

"This circumscribed inquiry [under § 3582(c)(2)] is not to be treated as a 'plenary

resentencing proceedings.'" *United States v. Navarro*, 800 F.3d 1104, 1110 (9th Cir. 2015)

(quoting *Dillon*, 560 U.S. at 826). The appropriate use of sentence-modification under

§ 3582(c)(2) "'is to adjust a sentence in light of a Guidelines amendment,' so courts may not use

such proceedings to 'reconsider [] a sentence based on factors unrelated to a retroactive

Guidelines amendment.'" *Id.* (quoting *United States v. Fox*, 631 F.3d 1128, 1132 (9th

Cir. 2011)).

**B.  Equal Protection under the United States Constitution**

"When the Commission enacts Guidelines treating one class of offenders differently from

another, equal protection generally requires that the classification be 'rationally related to a

legitimate government interest.'"[2] *Navarro*, 800 F.3d at 1113 (quoting *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007)). If the classification implicates a fundamental right or a suspect classification, the Sentencing Commission's decision would be subject to a higher level of scrutiny. *Id.* at 1113 n.7. Defendants argue that because their liberty is at stake, heightened scrutiny is appropriate. This argument, however, is foreclosed by the Ninth Circuit's decision in *Navarro*, which noted that rational-basis review is generally applied when the Guidelines treat classes of offenders differently and applied rational-basis review in considering constitutional challenges to § 1B1.10. *Id.* at 1113. The Court is bound by this precedent.

A classification is rationally related to a legitimate government interest "if there is any *reasonably conceivable* state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (emphasis added). Under rational-basis review, the burden is on the party seeking to disprove the rationality of the relationship between the classification and the purpose, and that party must "negative every conceivable basis which might support" the classification "whether or not the basis has a foundation in the record." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotation marks and citations omitted). Thus, courts are to accept generalizations regarding the rational basis, "even when there is an imperfect fit between means and ends" and even if the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321 (quotation marks and citation omitted).

---

[2] As noted by the Ninth Circuit, the Guidelines technically are not governed by the Equal Protection Clause of the Fourteenth Amendment, which applies only to states, but the Due Process Clause of the Fifth Amendment "similarly prohibits unjustified discrimination by federal actors" and the "'approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.'" *Navarro*, 800 F.3d at 1112 n.6 (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

## BACKGROUND

**A.  History of Relevant Guidelines Amendments**

In 2010, Congress passed the Fair Sentencing Act ("FSA") to "restore fairness to Federal cocaine sentencing." Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). Among other provisions, the FSA reduced the disparity between the amount of crack cocaine and powder cocaine needed to trigger mandatory minimum sentences and gave the Sentencing Commission the authority to amend the Guidelines to reflect the statute's changes. *Id.* §§ 2, 8. Pursuant to this authority, in 2011 the Sentencing Commission promulgated Amendment 750, which, among other things, reduced base offense levels for certain crack-cocaine-related offenses. U.S.S.G. Manual App'x C, Amend. 750, Part A (2011). The Sentencing Commission gave Amendment 750 retroactive effect. U.S.S.G. Manual App'x C, Amend. 759 (2011).

In 2011, the Sentencing Commission also amended §1B1.10, its policy statement applicable to sentence reductions as a result of an amended guideline range. As relevant here, the Sentencing Commission amended §1B1.10(b)(2)(B), which provides the exceptions to § 1B1.10(b)(2)(A)'s general prohibition against reducing a sentence below the amended guideline range. The previous version stated:

> Exception.—If the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate. However, if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), a further reduction generally would not be appropriate.

U.S.S.G. Manual § 1B1.10(b)(2)(B) (2010). This allowed defendants who received below-guidelines departures or variances at their original sentencing to receive a comparable reduction below the amended guideline range in a sentence-modification proceeding.

PAGE 6 – OPINION AND ORDER

The 2011 amended version of § 1B1.10(b)(2)(B) removed the sentence-modification judge's discretion to consider any variances or departures other than a departure for substantial assistance.[3] The amended version states:

> Exception for Substantial Assistance.—If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

U.S.S.G. Manual § 1B1.10(b)(2)(B) (2011). This is the version that is currently effective.

On November 1, 2014, the Sentencing Commission issued Amendment 782 to the Guidelines. U.S.S.G. Manual App'x C, Amend. 782 (2014). Amendment 782 reduces base offense levels by two for certain drug crimes, including the crimes of which Defendants were convicted. The Sentencing Commission also amended a portion of § 1B1.10, in a manner not relevant to this case.

**B.  Defendants' Sentencing Information**

Guzman and Morales were members of a large drug trafficking organization that operated out of Chuy's Auto Repair in Portland, Oregon. In the course of investigating this operation, law enforcement seized more than 6 kilograms of heroin and 9 kilograms of "highly pure" methamphetamine. The investigation revealed that Guzman employed several couriers and distributors and that Morales was a distributor for Guzman. Guzman and Morales were indicted together, along with others.

Guzman and Morales each pled guilty to count one of the superseding indictment, which alleged conspiracy to distribute heroin and methamphetamine and to use communication devices,

---

[3] Departures other than a departure for substantial assistance are also referenced herein as "non-cooperation departures."

in violation of 21 U.S.C. §§§ 841(1), 841(b)(1)(A), 843, and 846. Guzman and Morales entered into similar plea agreements, agreeing to a base offense level of 36, joint recommendations of a three-level downward adjustment under U.S.S.G. §3E1.1 for acceptance of responsibility and a two-level downward adjustment under the safety valve, U.S.S.G. §§ 2D1.1(b)(16) and § 5C1.2. Both plea agreements also included joint recommendations for a downward variance under 18 U.S.C. § 3553(a) for resolving a complex case without filing motions, allowed Defendants to argue for additional departures and variances, and limited the government's ability to seek enhancements.

### 1. Jesus Morales

In his original sentencing, Morales's base offense level was 36, which was then reduced by three levels for acceptance of responsibility and two levels for the safety-valve. This resulted in an offense level of 31. Based on his Criminal History category of I, Morales's original guideline range was 108-135 months. He received downward variances in consideration of § 3553(a) factors as follows: less two levels for resolution of a complex case without litigation and less two levels for joint mitigation to avoid unwarranted disparity with co-defendants (Morales was considered less culpable than Guzman and another co-defendant, who was the primary source of supply to the operation). Morales's resulting guideline level after the downward variances was 27, resulting in a guideline range of 70 to 87 months. To avoid unwarranted disparities between Morales and his co-defendants, particularly Guzman and the co-defendant who supplied the drugs, on its own initiative the government sought a sentence of 70 months, which is seventeen months' less than what was contemplated by the plea agreement. The Court sentenced Morales to 70 months.

In the pending motion, both Morales and the government agree that Morales's amended base offense level pursuant to Amendment 782 is 34. Because "all other guideline application

decisions" remain unaffected under § 1B1.10(b)(1), the parties agree that Morales should continue to receive the three-level reduction for acceptance of responsibility and the two-level reduction for the safety-valve, resulting in an amended offense level of 29. The next step is where the parties disagree.

The government asserts that because § 1B1.10(b)(2) provides that a sentence may not be further reduced except for a reduction based on substantial assistance, which does not apply in this case, under Amendment 782 Morales's amended offense level is 29 with a corresponding guideline range of 87-108 months. Thus, concludes the government, because Morales was originally sentenced to 70 months, which is "less than the minimum of the amended guideline range," §1B1.10(b)(2) prohibits the Court from reducing Morales's sentence.

Morales argues that the variances he received should be considered "guideline application decisions" that are to remain unaffected and thus he should continue to receive the benefit of those two variances. Morales also argues that to the extent § 1B1.10(b)(2) prohibits Morales from receiving any benefit under Amendment 782, the policy statement is unlawful and unconstitutional. Thus, Morales calculates his amended guideline range as follows: the agreed-upon amended offense level of 29, less two levels for early resolution of a complex case and less two levels for joint mitigation, for an amended offense level of 25 with a corresponding guideline range of 57 to 71 months. He seeks a sentence reduction to 57 months.

**2.   Bernardo Contreras Guzman**

Guzman's sentence was calculated exactly the same way as Morales's, except Guzman did not receive the additional two-level downward variance for being a less culpable participant. Thus, Guzman was originally sentenced at an offense level of 29 (36 base offense level, minus three levels for acceptance of responsibility, minus two levels for safety-valve, and minus two

levels for resolution of a complex case without litigation). Accordingly, his original guideline range was 87-108 months. The Court sentenced Guzman to 87 months.

Under Amendment 782, Guzman's base offense level is reduced to 34 and his five-level downward adjustment for acceptance of responsibility and safety-valve remain, for an amended offense level of 29, with an amended guideline range of 87-108 months. The government asserts that the analysis must end here and that the Court is constrained from reducing Guzman's sentence below the low end of the amended guideline range, which is the sentence he already received, 87 months. Guzman argues that his two-level downward variance for resolving a complex case without litigation applies under Amendment 782 and that he is therefore eligible for a sentence reduction commensurate with an amended offense level of 27, yielding an amended guideline range of 70-87 months. He seeks a sentence reduction to 70 months.

## DISCUSSION

Defendants argue that in having their sentences modified under Amendment 782, they should continue to receive the benefit of the downward variances that were negotiated and agreed-upon in their plea agreements and applied by the Court in their original sentencing. Defendants assert that the government's interpretation of § 1B1.10(b)(2) as requiring that courts may not apply variances and non-cooperation departures in sentence-modification proceedings is unlawful because: (A) variances and departures are "guideline application decisions" that are specifically instructed to be left "unaffected" under § 1B1.10(b)(1) and are therefore included in calculating the "amended guideline range"; (B) the requirement as interpreted by the government is contrary to the Sentencing Commission's statutory directive; (C) the requirement as interpreted by the government violates equal protection; and (D) under the doctrine of constitutional avoidance, if the Court finds "serious questions" as to the constitutionality of

§ 1B1.10(b)(2) as interpreted by the government, the Court should interpret the provision as including departures and variances, as interpreted by Defendants.

## A. Whether Variances and Departures are "Guideline Applications Decisions"

Section 1B1.10(b)(1) instructs that when considering a sentence modification pursuant to a retroactive Guidelines change, the changed provision is incorporated and "all other guideline application decisions" are to remain unaffected. Defendants argue that variances and departures are "guideline application decisions" that must remain unaffected. Thus, argue Defendants, the government's interpretation of § 1B1.10(b)(2)(A) to limit a court's ability to reduce a sentence below the amended minimum guideline range after the applicable Guidelines amendment is applied is contrary to § 1B.10(b)(1)'s directive to keep all other "guideline application decisions" unaffected.

A "departure" is a divergence from the originally calculated sentence range based on a specific Guidelines departure provision, whereas a "variance" is a divergence from the Guidelines range based on an exercise of the Court's discretion under § 3553(a). *See United States v. Fumo*, 655 F.3d 288, 317 (3d Cir. 2011), *as amended* (Sept. 15, 2011). Defendants argue that variances and departures are "guideline application decisions" and thus are required to be applied after Amendment 782 is employed to lower the base offense level, resulting in an "amended guideline range" that includes the originally-applied departures and variances.

The phrases "guideline application decision" and "amended guideline range," in isolation, may be ambiguous as to whether they include departures and variances. When considering the full text of § 1B1.10, its commentary, the text of its previous version, and applicable case law, however, it is evident that these phrases do not include variances and departures.

### 1.  Text and context of current version of § 1B1.10

The interpretation that departures and variances are not "guideline application decisions" and thus are not included in the "amended guideline range" is consistent with the text and context of § 1B1.10. If departures and variances were "guideline application decisions" that were part of the "amended guideline range," then § 1B1.10(b)(2)(B) would contain surplusage. Section 1B1.10(b)(2)(B) creates an exception allowing a reduction below the "amended guideline range" based on substantial assistance, as long as such a reduction was part of the original sentencing pursuant to a government motion. If departures and variances were "guideline application decisions" that had to remain unaffected under § 1B1.10(b)(1) and were therefore included in the "amended guideline range," then there would be no need to create a specific exception to allow a reduction in a sentence-modification proceeding for substantial assistance. Under Defendants' interpretation, the substantial assistance reduction would necessarily be included in the sentence modification as a "guideline application decision" and the exception created in § 1B1.10(b)(2)(B) would be superfluous, and arguably meaningless. Defendants' interpretation is contrary to "the canon of construction that courts interpret statutes so as not to render any section meaningless." *Meng Li v. Eddy*, 324 F.3d 1109, 1110 (9th Cir. 2003) (citing *Beck v. Prupis*, 529 U.S. 494, 506 (2000)); *see also United States v. Harrell*, 637 F.3d 1008, 1010-11 (9th Cir. 2011) (noting that courts must give effect to each word and "must 'mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous'" (alteration in original) (quoting *United States v. Cabaccang*, 332 F.3d 622, 627 (9th Cir. 2003) (en banc))).

The government's interpretation is also consistent with the Guidelines' definition of "departure." Under the Guidelines, "departure" is an "imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline

PAGE 12 – OPINION AND ORDER

sentence." U.S.S.G. Manual § 1B1.1, Application Note 1(E). The Supreme Court similarly has defined "departure" as creating a non-Guidelines sentence. *See Irizarry v. United States*, 553 U.S. 708, 714 (2008) ("'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.").

Additionally, this interpretation is consistent with the commentary to § 1B1.10. The Guidelines commentary "is akin to an agency's interpretation of its own legislative rules" and if it "does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stinson v. United States*, 508 U.S. 36, 45 (1993); *see also United States v. Vasquez-Cruz*, 692 F.3d 1001, 1006 (9th Cir. 2012) (quoting *Stinson* to support the proposition that "a change in the language of an applicable Guidelines provision, including a change in application notes or commentary, supersedes prior decisions applying earlier versions of that provision, just as we would be bound to apply the updated version of an agency rule or regulation").

A court may only impose a sentence reduction that is consistent with the applicable Guidelines policy statement (here, § 1B1.10). 18 U.S.C. §§ 3582(c)(1)(A)(ii), 3582(c)(2); *see also Dillon*, 560 U.S. at 821. Section 1B1.10(a) states that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if . . . [the amendment] does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. Manual § 1B1.10(a)(2). The Application Note of subsection (a) defines "applicable guideline range" as "the guideline range that . . . is determined before consideration of any departure provision in the Guidelines Manual or a variance." U.S.S.G. Manual § 1B1.10, cmt. n. 1(A). Although this commentary defines the phrase for purposes of § 1B1.10(a), the Court "detect[s] no reasoning that would overcome the presumption

that the same definition applies when determining the 'applicable' Guidelines range for purposes of § 1B1.10(b)." *United States v. Steele*, 714 F.3d 751, 755, n.2 (2d Cir. 2013). Additionally, as discussed by the Second Circuit, the "amended guideline range" is simply the "applicable guideline range" after a retroactive amendment has been applied—there is the "applicable guideline range" at the time of the original sentencing and the "applicable guideline range" after the amendment is applied, and the phrase "amended guideline range" refers to the latter. *United States v. Montanez*, 717 F.3d 287, 293 (2d Cir. 2013). Accordingly "courts should use the same procedure to calculate both the applicable guideline range and the amended guideline range, departing from that procedure in the case of the amended guideline range only to 'substitute . . . the [relevant guideline] amendments.'" *Id.* (alteration in original) (quoting U.S.S.G. Manual § 1B1.10(b)(1)). Thus, after considering the applicable retroactive amendment, the "amended guideline range" does not include departures or variances. *Id.* (noting that in determining the amended guideline range, courts should not consider any departures or variances).

Similarly, the Application Note of subsection (b)(2) is illustrative in demonstrating that departures and variances are not "guideline application decisions" that are part of the "amended guideline range." This Application Note provides examples of how the amended guideline range is to be calculated. U.S.S.G. Manual § 1B1.10, cmt. n. 3. The example discussing original sentences that were "outside the guideline range applicable to the defendant at the time of sentencing" because of downward departures or variances clarifies that such downward adjustments do not carry over into the new sentence that may be imposed pursuant to a retroactive Guidelines amendment. *Id.*

Finally, the commentary to Amendment 759, which enacted the 2011 amendments to § 1B1.10, explains that departures and variances are not included in the "applicable guideline

range," which means they are not included in the "amended guideline range." The "Reason for Amendment" provided by the Sentencing Commission in promulgating the amendment explained that it issued the amendment, in part, to resolve a circuit split over whether the "applicable guideline range" includes any departures.[4] U.S.S.G. Manual App'x C, Amend. 759, Reason for Amendment, at 421 (2011). The Sentencing Commission noted that some circuits applied certain departures, particularly departures under § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), in determining the applicable guideline range, whereas other circuits did not. *Id.* Thus, the amendment "amends Application Note 1 to clarify that the applicable guideline range referred to in § 1B1.10 is the guideline range determined pursuant to § 1B1.1(a), which is determined before consideration of *any* departure provision in the Guidelines Manual or *any* variance." *Id.* (emphasis added). Defendants argue that this comment is irrelevant because the circuit split did not involve the issues raised in this case and instead involved departures under § 4A1.3. The amendment, however, was not constrained to that one departure, but was made more broadly to clarify that the "applicable guideline range" does not include *any* departures or *any* variances.

The commentary's interpretation that "guideline application decisions" and "amended guideline range" do not include departures and variances is not plainly erroneous or contrary to the regulation, or, as discussed further below, unconstitutional or contrary to statute. Accordingly, it is given controlling weight.

### 2.  Text and context of previous version of § 1B1.10

The interpretation that departures and variances are not "guideline application decisions" that are included in the "amended guideline range" is further supported by considering the text

---

[4] Courts may properly rely on the Reason for Amendment to interpret an amendment. *See United States v. Boyd*, 721 F.3d 1259, 1263-64 (10th Cir. 2013).

and context of the previous version of § 1B1.10, before the 2011 amendment. Defendants'
interpretation under this version of § 1B1.10 would again render certain provisions surplusage
and arguably meaningless. The previous version contained the same provisions instructing courts
to leave "guideline application decisions" unaffected in § 1B1.10(b)(1) and foreclosing the court
from reducing a sentence to a term that is less than the minimum of the "amended guideline
range" in § 1B1.10(b)(2)(A). U.S.S.G. Manual § 1B1.10 (2010). But the previous version had
different text in § 1B1.10(b)(2)(B), instructing that on modification, reductions comparable to
original departures "may" be appropriate but that reductions comparable to original variances
"generally would not be appropriate." U.S.S.G. Manual § 1B1.10(b)(2)(B) (2010). Thus, under
the previous version of § 1B1.10(b)(2)(B), a court had the discretion in modifying a sentence to
apply, or not to apply, departures or variances that had originally been applied. If departures and
variances were "guideline application decisions" that were required to remain unaffected, then
the court would have no need of the "discretion" to apply departures and variances because they
already would need to be included, and the discretion not to apply them would run afoul of the
directive to leave "guideline application decisions" unaffected. The fact that the current version
of § 1B1.10(b)(2) removes the Court's discretion to consider variances and departures other than
for substantial assistance does not convert departures and variances into "guideline application
decisions" that are part of the "amended guideline range."

    3.  **Case law**

    The Eleventh Circuit, in an unpublished opinion, recently considered and rejected the
precise argument that Defendants make here. *United States v. Pierce*, 616 F. App'x 410, 411
(11th Cir. 2015) (per curiam). The defendant in *Pierce* argued that "§ 1B1.10(b)(2) here nullifies
what § 1B1.10(b)(1) requires to be left 'unaffected' because [the defendant] will not receive the
benefit of a downward variance comparable to the one he received at his original sentencing." *Id.*

The Eleventh Circuit rejected this argument, finding that "the variance from which Pierce seeks

to benefit and application of which was barred by § 1B1.10(b)(2) was not a 'guideline

application decision,' as variances are imposed after the applicable guideline range is set." *Id.*;

*but see United States v. Shrewder*, 2015 WL 6123754, at *1 (N.D. Ohio Oct. 16, 2015) (noting

without analysis that "[i]n order to leave all other guideline application decisions unaffected, this

Court applies the same enhancements and departures applied by [the original sentencing

judge]").

        Other Circuits have also found that departures and variances are not a "guideline

application decision" or are not to be included in the "amended guideline range." *See, e.g.*,

*United States v. Hogan*, 722 F.3d 55, 60 (1st Cir. 2013) ("Thus, Application Note 1 prohibits

courts from applying departures prior to the determination of the amended guideline range in a

proceeding for a sentence reduction under 18 U.S.C. § 3582(c)(2)."); *United States v. Boyd*, 721

F.3d 1259, 1260-64 (10th Cir. 2013) (analyzing the text and commentary of § 1B1.10 and

associated provisions and concluding that a downward departure was not an "application

decision" that remains "unaffected" but "is to be disregarded in calculating the defendant's

amended guideline range"); *Montanez*, 717 F.3d at 292 (analyzing the text of § 1B1.10 and its

commentary and concluding "[c]onsequently, the 'amended guideline range,' as the 'range that

would have been applicable to the defendant' had the relevant amendments been in effect, does

not incorporate any departure a court previously granted under [the departure provision at issue

in the case]"); *United States v. Valdez*, 492 F. App'x 895, 899 (10 Cir. 2012) (finding that the

Application Notes to § 1B1.10 foreclose the argument that departures or variances are "guideline

application decisions" because "they make it clear that the 'guideline range' affected by a

§ 3582(c)(2) proceeding is the range calculated *before* any departure or variance from the Guideline calculation" (emphasis in original)).

Although the Ninth Circuit has not yet directly considered whether departures and variances are "guideline application decisions," it has determined that they are not included in the "applicable guideline range." *See United States v. Pleasant*, 704 F.3d 808, 812 (9th Cir.) *cert. denied,* 134 S. Ct. 824 (2013) ("In short, Amendment 759 makes clear that the applicable guideline is derived pre-departure and pre-variance."). If departures and variances were "guideline application decisions," they would necessarily be included in the amended "applicable guideline range" (or "amended guideline range"). Thus, the Ninth Circuit's conclusion that departures and variances are not included in the "applicable guideline range" forecloses the argument that they are "guideline application decisions" or that they should be included in the "amended guideline range."

In considering the previous version of § 1B1.10, courts also found that application of original departures and variances is not required when modifying a sentence under § 3582(c)(2), and thus they are not "guideline application decisions" that must remain unaffected. *See, e.g.*, *United States v. Vautier*, 144 F.3d 756, 761 (11th Cir. 1998) (holding that "a district court, ruling on a defendant's § 3582(c)(2) motion, has the discretion to decide whether to re-apply a downward departure for substantial assistance when considering what sentence the court would have imposed under the amended guideline. . . . Thus, whether to consider a downward departure in determining what sentence the court would have imposed under the amended guideline remains discretionary, and the court is not bound by its earlier decision at the original sentencing to depart downward from the sentencing guidelines range."); *United States v. Wyatt*, 115 F.3d 606, 610 (8th Cir.1997) ("A discretionary decision to depart from the Guidelines range on

the basis of substantial assistance made at the original time of sentencing is not a 'guideline application decision' that remains intact when the court considers the new Guideline range. The district court's discretionary decision of whether to depart from the new amended Guidelines range based upon Wyatt's prior substantial assistance is not dictated or mandated by either its prior decision to depart or by the extent of the prior departure . . . . The district court retains unfettered discretion to consider anew whether a departure from the new sentencing range is now warranted in light of the defendant's prior substantial assistance." (citation omitted)). This interpretation remains consistent with the current text of § 1B.10.

### 4. Conclusion

Considering the text and context of § 1B1.10 and its commentary, court decisions interpreting the current and previous version of § 1B1.10, and the canons of constructions, the Court concludes that departures and variances are not "guideline application decisions" and are not included in the "amended guideline range." Defendants' arguments to the contrary are rejected.

### B. Whether §1B1.10(b)(2) Conflicts with the Sentencing Commission's Statutory Directive

Defendants also argue that §1B1.10(b)(2) conflicts with Sentencing Commission's statutory directive in 28 U.S.C. § 991(b), which states:

> (b) The purposes of the United States Sentencing Commission are to:
>
> (1) establish sentencing policies and practices for the Federal criminal justice system that:
>
> (A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code;
>
> (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to

> permit individualized sentences when warranted by mitigating or
> aggravating factors not taken into account in the establishment of
> general sentencing practices; and
>
> (C) reflect, to the extent practicable, advancement in knowledge of
> human behavior as it relates to the criminal justice process . . . .

28 U.S.C. § 991(b). Defendants contend that by permitting courts to grant sentence reductions to

people who did not receive variances and departures other than for substantial assistance but

requiring courts to deny reductions to people who did receive such variances and departures, this

provision nullifies the determinations previously made by the sentencing court and creates

unwarranted disparities.

In *United States v. Tercero*, the Ninth Circuit considered whether § 1B1.10, and

particularly its prohibition on consideration of variances and departures other than for substantial

assistance, conflicted "with the purpose of the Guidelines . . . . to bring about an effective, fair

sentencing system, with honest, uniform and *proportionate* sentences." 734 F.3d 979, 983 (9th

Cir. 2013) (quotation marks omitted) (emphasis added). The defendant in *Tercero* argued that

§ 1B1.10(b)(2) conflicted with this purpose because it precluded the district court from revising

the defendant's sentence to reflect the minor role she had played, which resulted in a downward

departure at her original sentencing. The Ninth Circuit rejected this argument, finding that:

> It is not in dispute, however, that when the district court originally
> sentenced Tercero, it *did* consider the sentencing factors set forth
> in § 3553(a). A motion brought under § 3582(c)(2) "does not
> authorize a sentencing or resentencing proceeding. Instead, it
> provides for the modification of a term of imprisonment by giving
> courts the power to 'reduce' an otherwise final sentence in
> circumstances specified by the Commission." *Dillon*, 130 S.Ct.
> at 2690. "Section 3582(c)(2)'s text, together with its narrow scope,
> shows that Congress intended to authorize only a limited
> adjustment to an otherwise final sentence and not a plenary
> resentencing proceeding." *Id.* at 2691. The procedural posture of
> this case makes it inappropriate for us to reweigh the sentencing
> factors set forth in § 3553(a) to assess the fairness of Tercero's 70-
> month sentence.

PAGE 20 – OPINION AND ORDER

*Id.* at 983 (emphasis in original). The court also emphasized that the Sentencing Commission has

been given a substantial role with respect to sentence modifications, tasked with deciding

whether to amend Guidelines and to what extent an amendment will be retroactive, and given

"the power to issue policy statements to address, among other things, 'the appropriate use of . . .

the sentence modification provisions set forth in' § 3582(c)." *Id.* (alteration in original) (quoting

18 U.S.C. § 994(a)(2)(C)). The Ninth Circuit thus concluded that "the revisions to § 1B1.10 fall

squarely within the scope of Congress's articulated role for the Commission." *Id.* at 983-84.

       The Court is bound by this Ninth Circuit precedent. Defendants attempt to distinguish

*Tercero,* arguing that it analyzed whether § 1B1.10 conflicted with the purpose of the

Guidelines, not whether § 1B1.10 conflicts with 28 U.S.C. § 991(b) and, particularly, its

prohibition against sentencing disparities. The Court finds this to be a distinction without

substantial difference. Although *Tercero* did not expressly cite to § 991(b), it analyzed, and

rejected, the argument that § 1B1.10 conflicted "with the purpose of the Guidelines . . . ." *Id.*,

at 983. The purposes of the Guidelines are directed by § 991(b), including the goal of eliminating

sentencing disparity. *See, e.g.*, *Dorsey v. United States*, 132 S. Ct. 2321, 2333 (2012) (citing and

quoting 28 U.S.C. § 991(b)(1)(B) for the proposition that "purposes of Guidelines-based

sentencing include 'avoiding unwarranted sentencing disparities among defendants with similar

records who have been found guilty of similar criminal conduct'"); *Chapman v. United*

*States*, 500 U.S. 453, 473 (1991) (J. Stevens, dissenting) (noting that "one of the central purposes

of the Sentencing Guidelines . . . was to eliminate disparity in sentencing"); *United States v.*

*Banuelos-Rodriguez*, 215 F.3d 969, 983 (9th Cir. 2000) ("A central goal of the Sentencing

Guidelines is to eliminate sentencing disparity. The purpose of the Sentencing Commission was

to establish guidelines that 'avoid[ ] unwarranted sentencing disparities among defendants with

similar records who have been found guilty of similar criminal conduct.' 28 U.S.C.

§ 991(b)(1)(B).”). Thus, *Tercero's* conclusion that § 1B1.10 does not conflict with the purpose of

the Guidelines implies that § 1B1.10 does not conflict with § 991(b).

Additionally, whatever the label placed on it, the substance of the argument in *Tercero*

was the same as Defendants raise here—that § 1B1.10(b)(2)'s prohibition on considering

departures and variances results in unfair and disproportionate sentences. The Ninth Circuit's

reasoning in rejecting this argument was not based on the text of § 3553(a). The Ninth Circuit

considered the broad power of the Sentencing Commission to establish sentence modification

limitations, the limited scope of § 3582(c) proceedings, and the fact that at original sentencing a

defendant received the benefit of consideration of all departures and variances in concluding that

it is “inappropriate” for a court to “reweigh” the § 3553(a) factors in considering a sentence

modification. That reasoning is equally applicable to Defendants' argument that § 1B1.10(b)(2)

conflicts with § 991(b).

Based on binding Ninth Circuit precedent, the Court finds that the limitation in

§ 1B1.10(b)(2)(A) precluding consideration of variances and non-cooperation departures in the

context of a sentence modification under 18 U.S.C. § 3582(c) does not conflict with 18 U.S.C.

§ 991(b).

## C.  Whether the Policy Statement Violates Equal Protection

The previous version of § 1B1.10(b)(2) gave courts considering a sentence reduction the

discretion to impose variances and departures comparable to those that were imposed during the

original sentencing. U.S.S.G. Manual § 1B1.10(b)(2) (2010). The current version of

§ 1B1.10(b)(2) eliminates this discretion and prohibits a court from reducing sentences based on

previously-imposed variances and non-cooperation departures. Defendants argue that this creates

two classes of persons—those who did not originally receive any variances or non-cooperation

departures and thus are eligible for a reduction, and those whose eligibility for a reduction is

constrained because they originally received variances or non-cooperation departures.

Defendants argue that there is no rational purpose for distinguishing between these two classes

and no rational relationship between prohibiting consideration of variances and non-cooperation

departures and a legitimate government purpose. As stated above, rational-basis review is quite

narrow and Defendants face a heavy burden to disprove the rationality of the relationship

between the change to § 1B1.10(b)(2) and any "reasonably conceivable" rational basis.

Defendants argue that the classification in §1B1.10(b) is analogous to classifications that

have been held to violate equal protection, such as classifications granting presentence credits to

persons convicted of crimes with a statutory minimum and denying those credits to persons

convicted of crimes that do not carry a statutory minimum (*Dunn v. United States*, 376 F.2d 191

(4th Cir. 1967) and *Myers v. United States*, 446 F.2d 232 (9th Cir. 1971)) and classifications

granting presentence credits to adults but not juveniles (*Jonah R. v. Carmona*, 446 F.3d 1000

(9th Cir. 2006)). These cases are distinguishable.

The cases involving presentence credits being given for crimes with a mandatory

minimum sentence but not for crimes without a mandatory minimum are distinguishable for

several reasons. First, it is a reasonable assumption that crimes with a mandatory minimum

sentence are more serious than crimes that do not have a mandatory minimum. *See Dunn*, 376

F.2d at 193-94 (noting that it "would be an arbitrary discrimination to credit a defendant with

presentence custody upon conviction of an offense of a magnitude requiring the imposition of a

minimum mandatory sentence, but to withhold such credit when the offense is not so grave as to

require a minimum term of imprisonment"). Although Defendants argue that members of the

class of inmates who did not receive any departures or variances are "more dangerous" and "less

deserving" of a reduction, Defendants have not shown that offenders who did not receive downward departures or variances are necessarily more dangerous or less deserving than offenders who did receive such departures and variances. The Court declines to so broadly paint the entire class. Departures and variances are given for many different reasons and are not necessarily an indication that an offender is less dangerous than an offender who did not receive a departure or variance.

Defendants also fail to prove that offenders convicted of only the most "grave" offenses will receive the benefit of retroactive sentence reductions. Persons convicted of "grave" offenses may have received departures or variances that render them ineligible for a reduction under Amendment 782, whereas persons convicted of lesser crimes may not have received any departures or variances, rendering them eligible.

Second, the provision of presentence credits to offenders convicted of crimes with mandatory minimum sentences was required under the applicable statute and was automatic. *See Dunn*, 376 F.2d at 193 ("Denial of [presentence custody] credit . . . where others guilty of crimes of the same or greater magnitude *automatically* receive credit, would entail an arbitrary discrimination within the power and hence the duty of the court to avoid." (emphasis added)). Here, whether to allow a sentence reduction, even to those inmates who qualify under § 1B1.10, is a discretionary decision made by the judge considering the sentence reduction.

Third, the interpretation that the statute prohibited presentence credits to any offenders other than those convicted of a crime with a mandatory minimum sentence was a constrained reading of the statute. The statute was enacted because although it was the uniform practice of courts to allow presentence credits to offenders convicted of crimes that did not have a mandatory minimum sentence, some courts prohibited such credits to offenders who were

convicted of crimes with a mandatory minimum sentence because those courts were concerned allowing such credits would conflict with the statutory minimum. *See id.* at 193. Accordingly, Congress enacted a statute clarifying that presentence credits were to be given to offenders convicted of crimes with a mandatory minimum sentence. *Id.* This was intended to expand the availability of presentence credits to offenders convicted of crimes with mandatory minimum sentences, not to flip the situation so that such offenders were the only persons eligible for presentence credits while offenders who previously had uniformly been receiving the credits were no longer eligible. *Id.* No such strained interpretation is present in this case. The Sentencing Commission's decision to remove any consideration of variances and non-cooperation departures was "careful and deliberate." *Hogan*, 722 F.3d at 61.

Finally, Defendants and other offenders who received departures and variances have not been precluded from receiving the benefit of those departures and variances. They received full consideration of all possible departures and variances at the time of their original sentencing and the benefit of any that were granted to them. Sentence-modification proceedings are not "plenary resentencing proceeding[s]." *Dillon*, 560 U.S. at 826. The fact that this class of offenders will not receive the benefit of comparable departures and variances in a resentencing proceeding does not detract from the fact that they already received that benefit in a lower original sentence. *See United States v. Berberena*, 694 F.3d 514, 521 (3d Cir. 2012) ("Rather than undo the effect of previous departures and variances, the Commission has merely limited the extent to which new ones can be awarded in § 3582(c)(2) proceedings.").

*Jonah R.* is similarly distinguishable. That case turned on statutory interpretation, looking at the statute on presentence credits, the Federal Juvenile Delinquency Act, and the Youth Corrections Act to determine whether juveniles were eligible for presentence credits. 446 F.3d

at 1103-05. After the federal District Court in the U.S. Virgin Island held that juveniles were not entitled to presentence credits, the Bureau of Prisons had changed its policy interpreting the relevant statutes as not permitting juveniles to receive presentence credits. *Id.* at 1002-03. The Ninth Circuit noted that it was not giving the ordinary "substantial deference" to the Bureau's interpretation because the agency did not argue for it, the revised interpretation contradicted previous interpretations, and the revised interpretation was based on a court case and not on agency expertise. *Id.* at 1006. The Ninth Circuit then determined whether juveniles were entitled to presentence credits by looking at the text, context, purpose, and legislative history of the relevant statutes. *Id.* at 1006-11. The Ninth Circuit also discussed a related statute that requires that presentence credit to be given to juvenile offenders convicted abroad and transferred to an American detention facility. *Id.* at 1007-08. The court then noted that "[i]t strains credulity . . . to think that Congress would intend to deal more harshly with juveniles unlucky enough to be arrested in the United States" and that "disparate treatment [of this sort] might well trigger equal protection concerns." Thus, the equal protection concern in *Jonah R.* was that juveniles who were arrested in the United States would not receive presentence credit, while juveniles arrested abroad would receive such credit. This type of concern is not present here. There is no geographic disparity or other similar, irrational basis for distinguishing which offenders will be eligible for a reduction.

Defendants also argue that revised § 1B1.10(b)(2) creates irrational results.[5] Defendants offer the following scenario: Two defendants are convicted of the same crime, have similar

---

[5] Defendants rely on *Mellouli v. Lynch*, 135 S.Ct. 1980 (2015), to argue that these irrational results demonstrate that § 1B1.10(b) fails under rational-basis review. *Mellouli* did not involve an equal protection claim, but analyzed whether a misdemeanor conviction under a Kansas law prohibiting drug paraphernalia triggered deportation under 8 U.S.C. § 1227(a)(2)(B)(i). *Id.* at 1983-84. In 2009, the Bureau of Immigration Appeals ("BIA") had

criminal histories, and have identical guideline ranges; Defendant A is originally sentenced to a

below-guidelines sentence, receiving a two-level downward variance because the judge found

that Defendant A's history and characteristics warranted a lighter sentence; Defendant B is

sentenced to the guidelines range because the judge determined a longer sentence was necessary

to carry out the purposes of § 3553(a). In a §3582(c) sentence-modification proceeding,

Defendant A is not eligible for an adjustment under § 1B1.10(b)(2) and Defendant B is, resulting

in Defendant B receiving a two-level downward adjustment and ultimately receiving the same

---

announced an interpretation of the relevant statutes that held that although state-law convictions
for drug possession or distribution required the conviction be based on a federally-controlled
substance under 21 U.S.C. § 802, drug paraphernalia offenses relate to the drug trade in general
and thus need not be proven to be paraphernalia related to a substance listed under § 802. *Id.*
at 1988. The Supreme Court found that this "disparate approach to state drug convictions" had
"no home in the text of § 1227(a)(2)(B)(i)," led "to consequences Congress could not have
intended," and arose from the BIA's "conflicting positions on the meaning of
§ 1227(a)(2)(B)(i)," which caused "the anomalous result that minor paraphernalia possession
offenses are treated more harshly than drug possession and distribution offenses." *Id.* at 1989.
The Supreme Court noted that it made "scant sense" that paraphernalia possession, "an offense
less grave than drug possession and distribution," triggered removal regardless of whether the
offense implicated a federally controlled substance, while the more serious crimes of drug
possession and distribution only triggered removal if they implicated a federally-controlled
substance. *Id.* ("The incongruous upshot is that an alien is *not* removable for *possessing* a
substance controlled only under Kansas law, but he *is* removable for using a sock to contain that
substance."). Based on its finding that BIA's interpretation made little sense, the Supreme Court
held that the interpretation "is owed no deference under the doctrine described in *Chevron U.S.A.
Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). *Id.*

    *Mellouli* is distinguishable from the case at bar. Unlike the BIA action in that case, the
Sentencing Commission here does not have conflicting policy statements on this issue, made a
deliberate decision to eliminate a court's discretion to apply variances and non-cooperation
departures during a sentence reduction under § 3582(c)(2) based on stated concerns, and made
the decision pursuant to the express grant of authority under 28 U.S.C. § 994(u), to "specify in
what circumstances and by what amount the sentences of prisoners serving terms of
imprisonment for the offense may be reduced." Further, § 1B1.10 does not create a result not
intended by the Sentencing Commission or by Congress. Additionally, *Mellouli* was not
analyzing agency action under a rational-basis review, but was interpreting a statute and
determining whether an agency's interpretation was entitled to deference.

sentence as Defendant A, despite the original sentencing judge's belief that Defendant B deserved a longer sentence than Defendant A.[6]

The Court notes that with one alteration, the situation between Defendants Guzman and Morales could have fallen into a similar scenario. This hypothetical assumes everything relating to Guzman and Morales's sentencing remains the same, except that Guzman and Morales do not receive the two-level downward variance for resolving a complex case without litigation. Under this scenario, Guzman has an offense level of 31 and receives a guidelines sentence of 108 months. Morales, still benefiting from the two-level downward variance for being less culpable, has an offense level of 29 and is sentenced to 87 months. Guzman, not having received any variances or non-cooperation departures, is then eligible for the two-level reduction under Amendment 782, which would reduce his offense level to 29 and his sentence to 87 months, the same as Morales's original sentence. Morales remains ineligible for any reduction under Amendment 782, and thus could end up with the same sentence as Guzman despite the fact that Morales's plea agreement, the prosecutor, and the original sentencing judge all contemplated that Morales was less culpable and deserved a shorter sentence than Guzman.

These scenarios, however, do not demonstrate that prohibiting consideration of variances and non-cooperation departures fails rational-basis review. First, it is important to acknowledge that application of a sentence reduction pursuant to a retroactive Guidelines amendment is

---

[6] Defendants also noted the unfairness of this policy statement is demonstrated by the fact that another co-defendant of Guzman and Morales, who was considered more culpable than both Guzman and Morales, received the benefit of Amendment 782 and now has a sentence shorter than Guzman's and only several months longer than Morales's. This co-defendant, however, is eligible for Amendment 782 pursuant to § 1B1.10(b)(2)(B). The more favorable treatment of defendants under § 1B1.10(b)(2)(B) has been found to be rational. *See United States v. Deamues*, 553 F. App'x 258 (3d Cir. 2014) (affirming *United States v. Deamues*, 2013 WL 593978 (W.D. Pa. Feb. 14, 2013)); *United States v. Jones*, 2015 U.S. Dist. LEXIS 50409 (W.D. Va. Apr. 16, 2015).

discretionary. It is therefore possible that a judge considering a reduction for Defendant B, or for Guzman in the modified sentencing hypothetical, would not apply the sentence reduction, believing the original longer sentence is sufficient but not greater than necessary to carry out the purposes of § 3553(a). If that were the case, then there would be no unwarranted disparity between Defendants A and B, or modified-hypothetical Morales and Guzman.

Second, even if offenders such as Defendant B or the modified-hypothetical Guzman would have benefitted from Amendment 782 and would have received modified sentences that are no longer proportionally longer than the "less culpable" co-defendants, that result does not prove an equal protection violation under rational-basis review. Defendants' burden under rational-basis review is to show that there is no reasonably conceivable set of facts that could provide a rational basis for the Sentencing Commission's classification of persons eligible for a sentence reduction, not that there is a possible set of facts that show a potentially irrational result from that classification. *See Heller*, 509 U.S. at 320-21 (noting that the party challenging a classification must "negative every conceivable basis which might support it" and that a classification survives rational-basis review even if "in practice it results in some inequality") (quotation marks omitted).

The Sentencing Commission provided two general reasons for making the change and creating the new classification of persons eligible for a reduction.[7] First, the Sentencing Commission noted that the previous version of the policy statement's distinction between

---

[7] As noted in *Navarro*, "under rational-basis review, the government actor generally need not 'actually articulate at any time the purpose or rationale supporting its classification.'" *Navarro*, 800 F.3d at 1113 n.8 (quoting *Armour v. City of Indianapolis, Ind.*, --- U.S. ---, 132 S.Ct. 2073, 2082 (2012)). As the Ninth Circuit did in *Navarro*, the Court here focuses on the governmental interests articulated by the Sentencing Commission because they are most easily addressed. For the reasons stated in Defendants' reply brief, however, the Court is not persuaded that the other purpose suggested in the government's brief, the need to avoid geographic disparities in sentencing, survives a rational-basis review.

*departures*, which "may" be appropriate to apply when reducing a sentence, and *variances*, which would "generally not" be appropriate to apply when reducing a sentence was difficult to apply and prompted litigation. The Sentencing Commission believed that a single limitation that prohibits consideration of both variances and departures, except for substantial assistance departures, "furthers the need to avoid unwarranted sentencing disparities and avoids litigation. . . . [and] promotes conformity with the amended guideline range and avoids undue complexity and litigation." U.S.S.G. Manual App'x C, Amend. 759, Reason for Amendment, at 420 (2011). Second, the Sentencing Commission was "concerned that retroactively amending the guidelines could result in a windfall for defendants who had already received a departure or variance, especially one that took into account the disparity in treatment between powder and crack cocaine . . . ." *United States v. Davis*, 739 F.3d 1222, 1225 (9th Cir. 2014). Defendants argue that neither of these concerns rationally justify limiting sentence reductions for defendants with variances and non-cooperation downward departures.

### 1. Reducing complexity, litigation, and disparities and promoting conformity

Defendants argue that the amended policy statement does not avoid undue complexity, litigation, or unwarranted disparity, and, to the contrary, creates more problems. Although the former version made a distinction between departures and variances, it left the application of both to the discretion of the judge. It also preserved the option of applying the original § 3553(a) factors. This approach, Defendants argue, promoted fairness and uniformity and avoided unwarranted disparity. The revised version, argue Defendants, increases the likelihood of litigation by purporting to remove the judge's discretion to apply comparable variances and non-cooperation departures and increases the risk of undue sentencing disparity by overriding many of the individualized decisions made by the original sentencing court after full analysis of the § 3553(a) factors.

PAGE 30 – OPINION AND ORDER

Defendants have not met their burden to refute every "reasonably conceivable" basis that might support the Sentencing Commission's decision that eliminating all variances and non-cooperation departures avoids undue complexity and litigation. Although some litigation may be generated challenging the lawfulness of the policy statement, the actual application of the policy statement is straightforward. No variances or non-cooperation departures are permitted, rendering the modification calculation a relatively simple exercise. The Sentencing Commission's conclusion that eliminating variances and non-cooperation departures made sentencing modifications less complex and thereby would reduce litigation survives rational-bases review.

Additionally, the Sentencing Commission's conclusion that eliminating variances and non-cooperation departures would promote uniformity with the amended guideline range also survives review. Without departures and variances, the modified sentence necessarily will fall within the amended guideline range.

Regarding the objective of reducing disparity in sentences, although removing the option to consider any § 3553(a) factors or non-cooperation departures may result in some disparity in sentences, Defendants have not shown that there are no "reasonably conceivable state of facts" in which the amended policy statement reduces sentence disparity. *Beach Commc'ns*, 508 U.S. at 313. The question is not whether the policy statement is the best method or wisest policy for addressing the government's concern, but whether there is a rational connection between the Sentencing Commission's concern and the decision to preclude application of any variances or non-cooperation departures. It was rational for the Sentencing Commission to be concerned that retroactive Guidelines amendments may not be imposed uniformly. Although the Court recognizes that some disparities in sentencing will likely result from this policy statement, the

PAGE 31 – OPINION AND ORDER

Court is constrained by the scope of rational-basis review. It cannot be said that constraining the discretion of judges' to apply variances and non-cooperation departures has no rational connection to addressing the Sentencing Commission's concern regarding disparate sentences.

### 2.   Concern relating to "windfall" sentences upon modification

Defendants also argue that public testimony and statistical evidence show that the Sentencing Commission's "windfall" concern was unfounded. Defendants note that the public testimony revealed that in general defendants would not get "windfalls" because judges had discretion in modifying a sentence to apply comparable departures and variances, and those judges who had originally varied from the guidelines range for policy reasons relating to the difference between powder and crack cocaine could deny any further sentence reduction. Defendants specifically point to testimony from the representative of the U.S. Department of Justice ("DOJ") commenting that judges depart for policy reasons to a small degree in "a very narrow class of cases" and that the DOJ would not object to sentence reductions in other types of cases such as departures for overstated criminal history or variances for medical or mental health conditions. Defs. Joint Memo., Dkt. 325 at 12 (citing Tr. of Pub. Hr'g Before the U.S. Sentencing Comm'n at 51, 59-60 (June 1, 2011)). Defendants further argue that even if such "windfalls" had been a problem, eliminating all reductions for variances and non-cooperation departures is not rationally related to that limited concern.

Under rational-basis review, the government's basis need not have a foundation in the record. *Heller*, 509 U.S. at 320; *see also Navarro*, 800 F.3d at 1114 (noting that the defendant's argument that there was insufficient evidence before the Sentencing Commission to conclude that Amendment 788's one-year delay was necessary before implementing Amendment 782 "misapprehends the scope of rational-basis review. Generally, 'the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis.'" (quoting

*Beach Commc'ns*, 508 U.S. at 315)). In fact, "rational-basis review allows for decisions 'based on rational speculation unsupported by evidence or empirical data.'" *Navarro*, 800 F.3d at 1114 (quoting *Beach Commc'ns.* 508 U.S. at 315).

Here, the Sentencing Commission's speculation that some offenders may have received a departure or variance to *de facto* adjust for a judge's belief that the crack cocaine drug guidelines were too high was rational. Eliminating consideration of all variances and non-cooperation reductions has some "rational connection" to this government interest.[8] Similarly, with respect to Amendment 782, the Sentencing Commission could rationally speculate that some offenders may have received a departure or variance to adjust for a judge's belief that the drug guidelines were too high. This is all that is needed under rational-basis review, "regardless of whether [the policy statement] is an 'exact fit' for the interest at issue" or "is an imperfect fit between means and ends." *Navarro*, 800 F.3d at 1114. Although the Sentencing Commission's reasoning in eliminating all variances and non-cooperation departures will apply with greater force to those offenders who received variances and departures to adjust for the perceived unfairness of the drug guidelines than to those offenders who received variances and departures for other reasons, this fact alone does not render the decision constitutionally-deficient. *See id.* ("The fact that the

---

[8] The Court shares the concern articulated by the Second Circuit, which questioned as a policy matter the Sentencing Commission's decision to address the "windfall" problem by completely eliminating a court's discretion to give the benefit of previously-applied departures and variances during sentencing reduction proceedings. *Montanez*, 717 F.3d at 294. The Second Circuit noted that the "policy adopted in § 1B1.10(b)(2)(A) sweeps much more broadly [than the windfall concern], affecting even defendants . . . who benefitted from departures that were unrelated to prior versions of the crack-cocaine guidelines." *Id.* But as recognized by the Second Circuit, "Congress has given the Commission the authority to resolve these policy questions." *Id.* Although the Sentencing Commission may have used a broad approach to address its "windfall" concern, Defendants have not shown that this approach does not have any rational connection to addressing potential "windfall" situations.

Commission's reasoning will apply with greater force to some groups of inmates than to others does not invalidate its otherwise-valid decision.").

**D.  Constitutional Avoidance**

Defendant's final argument is that the Court need not resolve the equal protection challenge and strike §1B1.10's prohibition against consideration of variances and non-cooperation departures, but can instead apply the doctrine of constitutional avoidance. Defendants argue that they have raised "serious questions" regarding the constitutionality of interpreting § 1B1.10 as prohibiting consideration of variances and non-cooperation departures, and thus the Court should apply the doctrine of constitutional avoidance and interpret the policy statement so as to avoid these constitutional implications. Defendants argue this can be done by interpreting the term "amended guidelines range" to include previously-imposed variations and departures. Because the Court has not found a constitutional violation and does not find, under rational-basis review, that serious questions arise regarding the constitutionality of § 1B1.10's prohibition on considering variances and non-cooperation departures, the Court declines to apply the doctrine of constitutional avoidance.

## CONCLUSION

Defendant Guzman's amended motion (Dkt. 323) to reduce his sentence under 18 U.S.C. § 3582(c)(2) is DENIED. Defendant Morales's motion (Dkt. 280) to reduce his sentence under 18 U.S.C. § 3582(c)(2) is DENIED.

**IT IS SO ORDERED**.

DATED this 2nd day of December, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 34 – OPINION AND ORDER